UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

THERESA ANN GEDDINGS, )
)
Plaintiff, )
)
v. )            No. 4:22-CV-13-DCP
)
KILOLO KIJAKAZI,[1] )
Acting Commissioner of Social Security, )
)
Defendant. )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 16] and Defendant's Motion for Judgment on the

Administrative Record [Doc. 18].  Theresa Geddings ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo

Kijakazi ("the Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's

motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On August 20, 2018, Plaintiff filed an application for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a

period of disability that began on May 2, 2013 [Tr. 209–13].  After her application was denied

initially [*Id.* at 92–99] and upon reconsideration [*Id.* at 100–07], Plaintiff requested a hearing

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

before an ALJ [*Id.* at 124]. A telephonic hearing was held before the ALJ on December 12, 2019 [*Id.* at 67–84]. During the hearing, the ALJ determined a consultative examination would be necessary [*Id.* at 83]. On February 10, 2020, Plaintiff attended a consultative examination with Stephen K. Goewey, M.D. ("Dr. Goewey") [*Id.* at 1298]. On July 7, 2020, the ALJ held a second telephonic hearing and heard testimony from a vocational expert [*Id.* at 52–65]. On August 4, 2020, the ALJ found that Plaintiff was not disabled [*Id.* at 41–47]. The Appeals Council denied Plaintiff's request for review on March 4, 2021 [*Id.* at 16–19], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 3, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since August 20, 2018, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: gastric ulcer (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c).
>
> 5. The claimant has no past relevant work (20 CFR 416.965).

2

6. The claimant was born on August 14, 1958 and was 60 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. The claimant subsequently changed age category to advanced age (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2018, the date the application was filed (20 CFR 416.920(g)).

[Tr. 43–47].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different

3

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

4

than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record."  20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e).  RFC is the most a claimant can do despite his limitations.  §§ 404.1545(a)(1), 416.945(a)(1).

5

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises two arguments on appeal as to why the ALJ's decision should be remanded. First, Plaintiff argues "[t]he RFC determination in this case is not supported by substantial evidence because the ALJ rejected the opinion of Dr. Goewey, who performed the agency's internal medicine consultative examination, in reliance on state agency examiners who declined to assess an RFC and who never saw Dr. Goewey's report" [Doc. 17 p. 1]. Second, Plaintiff argues "[t]he ALJ failed to comply with the regulations when she found Dr. Goewey's opinion unpersuasive without discussing the factors of supportability and consistency" [*Id.*]. The Commissioner contends that Plaintiff's arguments are without merit because the ALJ properly evaluated the state agency medical consultant's prior administrative medical findings, the ALJ properly evaluated the consultative examiner's medical opinion, and substantial evidence otherwise supports the ALJ's step five findings [Doc. 19 p. 1]. Having reviewed this matter and considered the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's final decision, which applied the correct legal standards and procedures and is otherwise supported by substantial evidence. The Court will take up Plaintiff's two arguments in reverse order.

**A.** **Whether the ALJ Applied the Correct Legal Standards in Evaluating the Persuasiveness of Dr. Goewey's Opinion**

Plaintiff argues "[t]he ALJ failed to comply with the regulations when she found Dr. Goewey's opinion unpersuasive without discussing the factors of supportability and consistency" [Doc. 17 pp. 10–14]. Plaintiff cites 20 C.F.R. § 404.1520c to argue the Social Security Administration has set forth the proper considerations to be used in evaluating medical opinion evidence when establishing a claimant's RFC, including that the ALJ must determine the persuasiveness of each opinion by considering the factors of supportability, consistency, examining relationship, and specialization, among others. [*Id.* at 10]. Plaintiff relates "that the ALJ must articulate how supported and consistent the opined limitations are with the record" [*Id.* at 11 (citing 20 C.F.R. § 404.1520c(b))]. Plaintiff argues the ALJ failed to satisfy the regulatory articulation requirements in this case because she "rejected Dr. Goewey's opinion on the basis of her own independent medical knowledge" [*Id.* at 11–12], whereas Dr. Goewey's opinion is supported by evidence in the record [*Id.* at 12–13], and the ALJ otherwise failed to adequately explain the reasoning behind her determinations [*Id.* at 13–14]. Plaintiff argues this error was not harmless, as the Commissioner bears the burden to prove that there is work available in the national economy that Plaintiff could perform [*Id.* at 14]. In response, the Commissioner argues that the ALJ properly explained how she considered the factors of supportably and consistency in finding Dr. Goewey's opinion partially persuasive and did not otherwise insert her own independent medical knowledge when evaluating the opinion [Doc. 19 pp. 20–21]. For the reasons discussed below, the Court finds the ALJ applied the correct legal standards in her evaluation of Dr. Goewey's opinion.

7

1. **Applicable Law**

In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). As of March 27, 2017,[2] an ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors,[3] the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). The ALJs are required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a

---

[2]     For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended on whether the opinion was from "non-examining sources; examining but non-treating sources; [or] treating sources." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). Under the prior regulations, "a treating physician's opinion [was] due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.*

[3]     The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

8

coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

### 2. Whether the ALJ Sufficiently Articulated Why She Found Dr. Goewey's Opinion Partially Persuasive

Dr. Goewey performed an examination of Plaintiff on February 10, 2020 [Tr. 1298]. Following the examination, Dr. Goewey prepared a three-page report that contained a summary of Plaintiff's history, the examinations he conducted, and his assessment of Plaintiff's diagnoses [*Id.* at 1298–1300]. Along with his report, Dr. Goewey completed a Medical Statement of Ability to Do Work-Related Activities, in which he opined that claimant had certain work limitations [*Id.* at 1301–06]. The ALJ correctly summarized Dr. Goewey's opined limitations as follows:

> In February 2020, consultative examiner Dr. Goewey opined that the claimant could lift and carry up to 50 pounds occasionally and up to 20 pounds frequently; sit for one hour at a time or five hours total; stand for 30 minutes at a time of four hours total; and walk for 30 minutes at a time or two hours [total].[4] She could frequently use her upper and lower extremities. She could occasionally climb, and frequently balance, stoop, kneel, crouch, and crawl. She could frequently be

---

[4] The ALJ stated that Dr. Goewey opined Plaintiff could "walk for 30 minutes at a time or two hours at a time" [Tr. 46], whereas Dr. Goewey actually opined that Plaintiff could walk for thirty minutes at a time or two hours total [*Id.* at 1032].

9

exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, and humidity and wetness. She could never be exposed to pulmonary irritants or extreme temperatures (Ex. 3F).

[*Id.* at 46].[5]  The ALJ then evaluated the persuasiveness of Dr. Goewey's opinion as follows:

> I find [Dr. Goewey's] opinion to be partially persuasive.  Dr. Goewey's opinion that the claimant could lift and carry up to 50 pounds occasionally and up to 20 pounds frequently is supported by his examination report, in which he noted full strength, normal gait, negative straight leg raise testing, and full range of motion in all extremities (Ex. 3F).  These limitations are also consistent with the lack of objective medical evidence showing continued limitations (Ex. 1F, 2F).  Dr. Goewey's findings that the claimant would have significant limitations in standing, walking, sitting; postural activities; and environmental exposure are not supported by his examination report.  He noted no limitations in the claimant's ability to walk, sit, or stand.  He noted normal respiratory findings so no evidence for environmental limitations.  He noted full strength and full range of motion of the upper and lower extremities so no support for postural limitations (Ex. 3F). These limitations are also not consistent with the lack of objective medical evidence showing continued limitations (Ex. 1F, 2F).

[*Id.* at 46].

On appeal, Plaintiff argues "[t]his rationale does not satisfy the regulatory articulation requirements" because the ALJ used "her own independent medical knowledge" to find some of Dr. Goewey's restrictions were not supported by his report and inconsistent with the remainder of the record [Doc. 17 pp. 11–12].  Plaintiff's argument is similar to one she makes at another point in her supporting memorandum when she argues that the ALJ was impermissibly "playing doctor" when evaluating the persuasiveness of Dr. Goewey's opinion [*Id.* at 9 (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009))].

---

[5]    Dr. Goewey also opined that Plaintiff did not need to use a cane to ambulate, she could be exposed to loud noises, and she could perform various activities of daily life including shopping, traveling with a companion, using public transportation, preparing meals, and sorting, handling, or using paper files [Tr. 1301–06].

10

Contrary to Plaintiff's arguments, the ALJ was not inserting her own independent medical knowledge or "playing doctor" when evaluating Dr. Goewey's opinion. Rather, she was doing exactly what "the *Simpson* opinion makes clear that the ALJ is required to [do]," namely, "dissect[ing] and examin[ing] the strengths and weaknesses of any medical opinion presented during the administrative process," *Greene v. Kijakazi*, No. 3:21-0050, 2022 WL 2706109, at *5 (M.D. Tenn. July 11, 2022) (quoting *Simpson*, 344 F. App'x at 194) by considering and articulating how Dr. Goewey's opinion was, and was not, supported by his own findings and consistent with the other evidence in the record.

As to the supportability factor, section 404.1520c(c)(1) states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physician's explanations of [his] opinions" and "whether [the physician] provided support or an evidentiary basis for his medical opinions." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108, at *10 (W.D. Tenn. July 20, 2021) (internal quotations omitted). In this case, the ALJ sufficiently articulated how Dr. Goewey's opined limitations were, and were not, supported by his own examination findings. Specifically, the ALJ stated that Dr. Goewey's opined lifting and carrying limitations were supported by his examination findings that Plaintiff had "full strength, normal gait, negative straight leg raise testing, and full range of motion in all extremities," while Dr. Goewey's opined standing, walking, and sitting limitations were not supported by his examination findings that Plaintiff "no limitations in [her] ability to walk, sit or stand" [Tr. 46 (citing Ex. 3F)]. By citing how Dr. Goewey did, and did not, provide support or an evidentiary

11

basis for his opined limitations, the ALJ met the articulation requirements as it relates to the supportability factor.

As to the consistency factor, section 404.1520c(c)(2) states, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). Whether the ALJ sufficiently articulated the consistency factor often turns on whether they cited specific evidence in the record that was, or was not, consistent with the medical opinion findings. *Compare Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022) (finding ALJ sufficiently articulated the consistency factor with her "citation to the specific documents in the record" that allowed "the Magistrate Judge to assess the reasoning behind the ALJ's assertion"), *with King v. Kijakazi*, No. 1:20-CV-196-TAV-HBG, 2021 WL 3520695, at *7 (E.D. Tenn. July 21, 2021) (finding the ALJ failed to sufficiently articulate the consistency factor because he "failed to specifically cite to any examination findings or other evidence in the medical record that rendered Dr. Goewey's earlier opinion more consistent with the medical record than his subsequent examination" such that the court could not engage in meaningful review of the ALJ's decision), *report and recommendation adopted sub nom*, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021).

In this case, the ALJ found Dr. Goewey's minimal lifting and carrying limitations "are [] consistent with the lack of objective medical evidence showing continued limitations" [Tr. 46 (citing Ex. 1F, 2F)], while his opined limitations in standing, walking sitting, postural activities, and environmental exposure "are [] not consistent with the lack of objective medical evidence showing continued limitations" [*Id.* (citing Ex. 1F, 2F)]. For both of these statements, the ALJ cited specific exhibits in the record containing earlier treatment notes for Plaintiff. These

12

statements by the ALJ, with citations to specific exhibits in the record, sufficiently articulated the consistency factor as to Dr. Goewey's opinion. In addition, the ALJ had stated earlier in her decision:

> There is little evidence of continued symptoms or limitations following the claimant's discharge from the hospital. In fact, in July 2019, the claimant presented with a skin boil. Other than the boil, physical findings were normal (Ex. 1F at 41).
>
> In October 2019, the claimant presented with neck pain. Notably, she stated that she had no abdominal pain (Ex. 1F at 45). She was assessed with acute neck pain associated with radiculopathy of the upper cervical spine. She was prescribed Flexeril and discharged in stable condition (Ex. 1F at 46).

[*Id.* at 45]. These additional statements add further clarity by indicating exactly what portions of the exhibits are inconsistent with Dr. Goewey's opined limitations.

Thus, the Court finds that the ALJ sufficiently articulated both the consistency and supportability factors in evaluating the persuasiveness of Dr. Goewey's opinion such that the ALJ "buil[t] an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).[6] The Court therefore denies Plaintiff's first basis for remand.

---

[6] The Court construes Plaintiff's argument that, "the substance of the ALJ's rationale provides nothing which casts doubt on the internal supportability of Dr. Goewey's assessment and that the ALJ's rationale offers no genuine inconsistencies which undermine Dr. Goewey's opinion"—in support of which Plaintiff cites several portions of Dr. Goewey's report—as an argument about whether the ALJ reached the correct conclusions in applying the consistency and supportability factors, as opposed to whether the ALJ properly applied the consistency and supportability factors. Since this argument does not address whether the ALJ applied the correct legal standard, it will be addressed as part of Plaintiff's substantial-evidence argument discussed in the next section. *See Blakley*, 581 F.3d at 406 ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

**B.      Whether the ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff argues the ALJ's decision should also be remanded because the ALJ's RFC determination is not supported by substantial evidence [Doc. 17 pp. 6–10]. In support of this argument, Plaintiff challenges the ALJ's characterization of the state agency medical consultants' opinions [*id.* at 7–8], the ALJ's evaluation of Dr. Goewey's opinion [*id.* at 8–9], and the ALJ's overall RFC determination to the extent "the ALJ [incorrectly] rejected the opinion of Dr. Goewey . . . in reliance on state agency examiners" and "craft[ed] an RFC that was not based on any medical opinion" [*id.* at 9]. The Commissioner responds that the ALJ properly characterized the state agency consultants' opinions and any mischaracterization was harmless; the ALJ's evaluation of Dr. Goewey's opinion was supported by substantial evidence; the ALJ did not reject Dr. Goewey's opinion "in reliance on" the state agency medical consultants; and the ALJ was not required to base Plaintiff's RFC on any medical opinion [Doc. 19 pp. 14–20]. For the reasons discussed below, the Court finds the ALJ's RFC determination is supported by substantial evidence and remand is not otherwise warranted.

**1.      The ALJ's Characterization of the State Agency Consultants' Opinions**

In arguing the ALJ's RFC determination is not supported by substantial evidence, Plaintiff first challenges the ALJ's characterization of the state agency medical consultants' opinions. Specifically, Plaintiff challenges the ALJ's statement, "[t]he State agency medical consultants opined that the claimant had no severe impairments" [Tr. 46]. Plaintiff argues the ALJ's statement mischaracterizes the evidence because the state agency medical consultants "did not opine that the claimant had no severe impairments," but, rather, found insufficient evidence in the file to rate the severity of Plaintiff's impairments [Doc. 17 p. 7 (citing Tr. 95, 103–04)]. Plaintiff argues that the

14

ALJ's mischaracterization of the evidence warrants remand under *Keeton v. Commissioner of Social Security*, 583 F. App'x 515 (6th Cir. 2014) [Doc. 17 pp. 7–8].

In response, the Commissioner argues that "[w]hile Plaintiff is correct that the state agency medical consultants found that the record was insufficient to rate the severity of the impairments, the ALJ was not mistaken in her statement" because "[a]t both the initial and reconsideration levels of agency review, Plaintiff's primarily medically determinable impairment of '5690 – Other Disorders of Gastrointestinal System' was rated as 'non severe'" [Doc. 19 p. 14 (quoting Tr. 96, 104)]. Moreover, the Commissioner argues that "even if the ALJ *had* mischaracterized the findings, Plaintiff failed to show remand would be warranted" because the ALJ's mischaracterization, unlike the ALJ's mischaracterization in *Keeton*, does not call into question whether the ALJ would have reached the same conclusions absent the mischaracterization [*Id.* at 16–17].

The Court finds that the ALJ mischaracterized the findings of the state agency medical consultants, but that such mischaracterization does not warrant remand. Plaintiff is correct that the state agency medical consultants found insufficient information in the record to rate the severity of Plaintiff's impairments. State agency consultant Dr. Montague-Brown stated, "there is insufficient MER and functional evidence in the file to rate the severity of impairment(s)" [Tr. 95], while state agency consultant Dr. Pennington stated, "[t]he prior physical assessment completed by DDS at the initial level has been reviewed and found persuasive as it is supported by and consistent w[ith] lack of sufficient evidence with which to assess [the] claim properly" [Id. at 103–04]. It was the disability adjudicators, in reviewing the findings of Dr. Montague-Brown and Dr. Pennington, who found that Plaintiff did not have an impairment, or combination of impairments, that was severe [*Id.* at 96-98 (citing Dr. Montague-Brown's statements and rating Plaintiff's

15

impairment "5690 – Other Disorders of Gastrointestinal System" as "Non Severe"); *id.* at 104-106 (citing Dr. Pennington's statements and making the same non-severe finding as to impairment 5690)].

Whether an ALJ's misstatement or mischaracterization requires remand, however, depends on the extent to which the ALJ relied on the misstatement or mischaracterization in their subsequent analysis and findings. In *Keeton*, for example, the Sixth Circuit found the ALJ made several errors when evaluating the persuasiveness of a medical opinion, including "mischaracterizing the record, support[ing] her conclusion with inaccurate and improper reasoning, and ignor[ing] the opinions of [other experts]." *Keeton*, 583 F. App'x at 527–28. These errors, in turn, were the primary bases on which the ALJ had based his evaluation of the medical opinion. *See id.* at 525–28 (quoting the ALJ as rejecting the medical opinion because of the mischaracterized statement, improper reasoning, and the perceived lack of other supporting expert evidence). In remanding the ALJ's decision, the Sixth Circuit stated that "it [was] not clear that the ALJ would have come to the same conclusion" if not for these errors. *See id.* at 527.

In contrast, the Sixth Circuit in *Noto v. Commissioner of Social Security*, found that the ALJ's misstatement of the record did not require remand. 632 F. App'x 243, 247 n.2 (6th Cir. 2015). There, the ALJ stated in their decision that one of the plaintiff's treating physicians had documented that Plaintiff did not experience "any" back pain during pregnancy, whereas the physician actually documented that the plaintiff had "not a lot of" back pain. *See id.* While acknowledging that the ALJ had made a misstatement, the Sixth Court declined to remand on that basis because "[t]he difference between 'any' and 'not a lot of' is slight" and "[t]he important and reasonable point the ALJ derived from [the physician's] note [was] that Plaintiff apparently did not complain about experiencing a disabling level of back pain during her pregnancy." *Id.*

16

In this case, the ALJ did not rely on her misstatement of the state agency medical consultants' opinions in evaluating the persuasiveness of their opinions or otherwise formulating Plaintiff's RFC. Immediately after making the statement Plaintiff now challenges on appeal, the ALJ stated:

> I find these opinions [by the state agency medical consultants] to be partially persuasive. These consultants supported their opinions with reference to the record, and with their knowledge of program requirements. Their opinions are generally consistent with the lack of objective medical evidence in the record, and the claimant's apparent improvement following hospitalization (Ex. 1F, 2F). Based on the claimant's subjective representations, however, and the consultative examiner who noted some minimal physical findings, I find that the evidence is consistent with the claimant being limited to medium work.

[*Id.* at 46]. These later statements show that the important and reasonable point that the ALJ derived from the state agency medical consultants' opinions was not that Plaintiff lacked a severe impairment but, rather, that the consultants' opinions showed a general lack of objective medical evidence in the record. In fact, the ALJ ultimately found Plaintiff did have a severe impairment [*Id.* at 45]. Thus, unlike the ALJ in *Keeton*, the ALJ did not rely on her mischaracterization of the state agency consultants' findings in her subsequent analysis but, instead, reached the opposite conclusion. Accordingly, Plaintiff has failed to state a sufficient basis for remand based on the ALJ's mischaracterization.

## 2. The ALJ's Evaluation of Dr. Goewey's Opinion

Plaintiff next challenges the ALJ's evaluation of Dr. Goewey's consultative examination opinion. Since the Court has already determined that the ALJ applied the correct legal standards when evaluating Dr. Goewey's opinion, review is limited to whether the ALJ's evaluation is supported by substantial evidence. *See Blakley*, 581 F.3d at 405 ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings

17

of the ALJ are supported by substantial evidence."). In arguing the ALJ's evaluation of Dr. Goewey's opinion was not supported by substantial evidence, Plaintiff asserts that "the record lacks any medical opinion evidence to contradict Dr. Goewey's opinion, at all—not even a scintilla" [Doc. 17 p. 8]; that the ALJ impermissibly played doctor by second-guessing Dr. Goewey's medical expertise in favor of an absence of post-discharge objective findings [*Id.* at 9]; and that Dr. Goewey's review of the records, experience as an internal medicine physician, and examination findings otherwise support his opinion [*Id.* at 12–13]. In response, the Commissioner maintains that the lack of medical opinion evidence contradicting Dr. Goewey's opinion is not dispositive, as the ALJ must also consider other medical and nonmedical evidence [Doc. 19 pp. 18–19], and the ALJ did not otherwise impermissibly "play doctor" in this case but, rather, "properly performed the required regulatory analysis" [*Id.* at 20–21].

Plaintiff argues the ALJ's evaluation of Dr. Goewey's opinion is erroneous because there is no medical opinion evidence in the record that contradicts Dr. Goewey's findings [Doc. 17 p. 8]. However, an ALJ is not limited to considering only other medical opinion evidence when evaluating the persuasiveness of a medical opinion or otherwise determining a Plaintiff's RFC. *See, e.g., Fancher v. Kijakzi*, No. 2:20-CV-198-TRM-JEM, 2022 WL 824024, at *11 (E.D. Tenn. Feb. 18, 2022) (finding the ALJ sufficiently articulated the consistency factor by citing to the evidence of record and Plaintiff's own admissions in addition to other medical opinions); *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) ("An ALJ must consider 'all the relevant evidence in the record'—medical and non-medical alike—to determine a claimant's work capacity" (quoting 20 C.F.R. § 1545(a)(1))). Rather, the plain language of the regulations make clear the ALJ is to consider how consistent the medical opinion "is with the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 416.920c(c)(2).

18

In this case, the ALJ properly relied on evidence from other medical sources and nonmedical sources in finding Dr. Goewey's opinion was only partially persuasive. Specifically, the ALJ found Dr. Goewey's standing-walking-sitting, postural, and environmental exposure limitations "are also not consistent with the lack of objective medical evidence showing continued limitations" [Tr. 46 (citing Ex. 1F, 2F)]. Exhibits 1F and 2F, in turn, are Plaintiff's "Medical Evidence of Record, dated 02/15/2016 to 10/05/2019, from Lincoln Medical Center" and "Inpatient Hospital Records, dated 07/06/2018 to 07/28/2018, from Maury Regional Medical Center" [*Id.* at 4]. While these records span several hundred pages, the ALJ clarified in an earlier portion of her decision which parts of these exhibits show Dr. Goewey's opined limitations are not consistent with the lack of objective medical evidence showing continued limitations. Specifically, the ALJ stated,

> [Plaintiff] was discharged on July 28, 2018 with the following diagnoses: abdominal pain likely secondary to large fluid collection likely due to acute pancreatitis/pancreatic pseudocyst, status post percutaneous drain placement and removal; SBO; gastric ulcer, likely partial obstruction; pneumonia; sepsis; acute hypoxic respiratory failure, resolved; AKI due to SIRS/pancreatitis; CP associated with elevated BNP and troponin, likely demand ischemia; tobacco abuse; and insomnia (Ex. 2F at 6).

> There is little evidence of continued symptoms or limitations following the claimant's discharge from the hospital. In fact, in July 2019, the claimant presented with a skin boil. Other than the boil, physical findings were normal (Ex. 1F at 41).

> In October 2019, the claimant presented with neck pain. Notably, she stated that she had no abdominal pain (Ex. 1F at 45). She was assessed with acute neck pain associated with radiculopathy of the upper cervical spine. She was prescribed Flexeril and discharged in stable condition (Ex. 1F at 46).

[*Id.* at 45].

This evidence, which includes a clinical report from October 2019 indicating Plaintiff had no abdominal pain as well as other reports following her July 28, 2018 discharge that were devoid

of any indication of abdominal pain, is substantial evidence supporting both the ALJ's finding that Dr. Goewey's opinion was only partially persuasive, as well as her overall RFC determination. *See Barton v. Comm'r of Soc. Sec.*, No. 2:20-cv-2182, 2021 WL 1380258, at *5 (S.D. Ohio Mar. 25, 2021) (finding substantial evidence supported the ALJ's conclusion that a physician's medical opinion was unpersuasive when the ALJ cited the fact that the claimant themselves had not complained of any pain).

Plaintiff next argues that the ALJ "second-guessed Dr. Goewey's professional medical expertise with regard to clinical observations and relied on the absence of post-discharge objective findings to reject his opinion" [Doc. 17 p. 9]. Plaintiff argues "[t]his manner of playing doctor is impermissible" [*Id.* (citing *Simpson*, 344 F. App'x at 194)]. Contrary to Plaintiff's arguments, the Court finds that the ALJ did not impermissibly "play doctor" or substitute her own independent judgment in finding Dr. Goewey's opinion to be only partially persuasive. As discussed previously, the ALJ was doing exactly what "the *Simpson* opinion makes clear that the ALJ is required to [do]," namely, "dissect[ing] and examin[ing] the strengths and weaknesses of any medical opinion presented during the administrative process," *Greene*, 2022 WL 2706109, at *5 (quoting *Simpson*, 344 F. App'x at 194). Along these lines, the ALJ does not make improper "independent findings" when the ALJ considers all the relevant evidence in the record, including medical source opinions and other medical and non-medical evidence, and reaches a conclusion that is supported by substantial evidence. *See Reinartz*, 795 F. App'x at 449 (rejecting the plaintiff's argument that the ALJ relied on his own "independent findings" instead of the record when the ALJ considered all relevant medical and non-medical evidence, including the medical opinion evidence, accounted for some of the limitations in the medical opinion evidence, and

20

considered the medical opinions in conjunction with the plaintiff's own statements).  For the reasons already discussed, that is exactly what the ALJ did here.

Finally, Plaintiff argues that Dr. Goewey's opinion is supported by his examination of the record, his examination findings, and his medical expertise.  However, it is irrelevant whether the plaintiff "disagrees with the ALJ's findings," *id.* or points to other evidence in the record that would support their conclusion.  "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).  Thus, Plaintiff has failed to articulate a sufficient basis for remand as a result of the ALJ's evaluation of Dr. Goewey's opinion.

### 3.       The ALJ's RFC Determination

Along with challenging the ALJ's characterization of the state agency medical consultants' opinions and Dr. Goewey's consultative examination findings, Plaintiff also challenges how the ALJ evaluated these medical opinions in combination when determining Plaintiff's overall RFC. Specifically, Plaintiff argues "[t]he RFC determination in this case is not supported by substantial evidence because the ALJ rejected the opinion of Dr. Goewey . . . in reliance on state agency examiners who declined to assess an RFC and who never saw Dr. Goewey's report" [Doc. 17 p. 9].  She further argues that the ALJ erred by "crafting an RFC that was not based on any medical opinion" [*Id.*].  Finally, Plaintiff argues that these errors are not harmless as "[t]here are significant

21

exertional and non-exertional restrictions included in the assessment by Dr. Goewey, and this record does not contain vocational testimony which could carry the Commissioner's burden at the final step in the sequential evaluation" [*Id.*]. For the reasons discussed below, the Court finds that the ALJ's RFC determination is supported by substantial evidence and remand is not warranted.

As to Plaintiff's argument that the ALJ erred by rejecting Dr. Goewey's opinion "in reliance on" the state agency medical consultants, the Commissioner responds that, "[t]he ALJ did not cite to the state agency medical consultants' findings as a reason for finding Dr. Goewey's opinion to be partially persuasive. In fact, she did not rely on the state agency medical consultants' findings for *any* of her conclusions" [Doc. 19 p. 18]. The Commissioner is correct. The ALJ did not reject Dr. Goewey's opinion "in reliance on" the state agency consultants' opinions. As cited previously, the ALJ provided the following reasons for discounting Dr. Goewey's opinion:

> I find [Dr. Goewey's] opinion to be partially persuasive. Dr. Goewey's opinion that the claimant could lift and carry up to 50 pounds occasionally and up to 20 pounds frequently is supported by his examination report, in which he noted full strength, normal gait, negative straight leg raise testing, and full range of motion in all extremities (Ex. 3F). These limitations are also consistent with the lack of objective medical evidence showing continued limitations (Ex. 1F, 2F). Dr. Goewey's findings that the claimant would have significant limitations in standing, walking, sitting; postural activities; and environmental exposure are not supported by his examination report. He noted no limitations in the claimant's ability to walk, sit, or stand. He noted normal respiratory findings so no evidence for environmental limitations. He noted full strength and full range of motion of the upper and lower extremities so no support for postural limitations (Ex. 3F). These limitations are also not consistent with the lack of objective medical evidence showing continued limitations (Ex. 1F, 2F).

[Tr. 46]. These statements are void of any reference to the state agency consultants' opinions. In fact, as cited previously, the opposite was true—the ALJ rejected the state agency consultants' opinions based on Dr. Goewey's opinion [*Id.*].

To the extent Plaintiff's argument could be construed as her arguing simply that the ALJ improperly rejected Dr. Goewey's and "instead relied on" the state agency medical consultants' opinions, this argument would also fail. Again, the ALJ found the state agency consultants' opinions to be unpersuasive because they did not have the benefit of Dr. Goewey's report [*Id.*]. Furthermore, the ALJ's ultimate findings, including that Plaintiff had a severe impairment, aligns more with Dr. Goewey's opinion than the state agency medical consultants' opinions, who found an insufficient basis to even make that finding.

Plaintiff's argument that the ALJ also erred by "crafting an RFC that was not based on any medical opinion" [Doc. 17 p. 9], is similarly unpersuasive as "there is nothing in the governing regulations indicating that an RFC determination is substantially supported only if it is consistent with a medical opinion." *Barton*, 2021 WL 1380258, at *6. "Indeed, the Sixth Circuit [] has explicitly rejected the argument that an RFC determination cannot be supported by substantial evidence unless it is consistent with a medical opinion." *Id.* (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719,728 (6th Cir. 2013)); *see also Normile v. Kijakazi*, No. 3:20-CV-346-DCP, 2022 WL 619536, at *10 (E.D. Tenn. Mar. 2, 2022) (rejecting the plaintiff's suggestion "that the ALJ's RFC finding must be based on a specific medical *opinion* supporting the same conclusion" because "the Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the ALJ determined the RFC based upon objective medical and non-medical evidence"). Thus, remand is also not warranted on this basis.

Because the Court has already determined that the only error committed by the ALJ—her mischaracterization of the state medical consultants' opinions—does not warrant remand, Plaintiff's remaining argument that the ALJ's errors were not harmless is inapplicable. The Court notes, however, that it appears based on the record that the ALJ would have reached the same

23

outcome even if she had accepted all of the limitations in Dr. Goewey's report. The ALJ relied on the testimony of the vocational expert at step five in her analysis [Tr. 47]. The vocational expert, in turn, testified that Plaintiff would still be able to do the full range of medium work even with all of Dr. Goewey's opined limitations [*Id.* at 60–61]. Since Plaintiff does not challenge the vocational expert's opinion on appeal, it appears the ALJ would have ultimately concluded Plaintiff had the ability to do the full range of medium work even if she had found Dr. Goewey's opinion fully persuasive and adopted his limitations in their entirety. Thus, even if the ALJ had committed any of the errors Plaintiff argues above, any such errors would have been harmless.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Judgment on the Administrative Record [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge